IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DeANDRE CRAWFORD,              )
M30080,                        )
                               )
                    Plaintiff, )
                               )
vs.                            )
                               )        Case No. 22-cv-530-DWD
DR. BURKHARTZMEYER,            )
CHAPLIN VAUGHN,                )
JOHN DOE,                      )
L. LIVINGSTON,                 )
                               )
                   Defendants. )

## <u>MEMORANDUM AND ORDER</u>

**DUGAN, District Judge:**

Plaintiff DeAndre Crawford, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center (Lawrence), brings this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Specifically, he alleges that the Defendants prevented him from exercising his religion by failing to place him on the Ramadan diet or Jumah prayer lists, by denying him a medication administration schedule that conformed to his religious dietary needs, by impartial rulings on his grievances, and by issuing him an improper disciplinary ticket.  Defendants Livingston and Vaughn filed a Motion for Summary Judgment (Doc. 43) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Plaintiff responded.  (Doc. 55).  The evidence supports Plaintiff's contention that he exhausted or attempted to fully

exhaust his administrative remedies as to his claim against Vaughn, but the evidence does not support his contention as to Livingston, so the Motion will be granted in part and denied in part.

### BACKGROUND

Plaintiff alleges that he was transferred to Lawrence in late February of 2019. (Doc. 1 at 3). Upon arrival, he informed prison officials that he was a Muslim who practiced the Islamic faith. (*Id.*). He alleged in his complaint that Ramadan began around May 20, 2019 and lasted for 29 or 30 days. In observance of Ramadan, he refrains from eating or drinking from sun-up to sun-down. A fellow inmate told him that there was a Ramadan fasting list, so he made requests to be placed on the list. (*Id.*). He also requested accommodations for the administration of his medications, to account for the fast. (*Id.* at 3-4). He again renewed the requests in April of 2020 to no avail. (*Id.* at 5).

As to Defendant Livingston, Plaintiff alleged that this defendant denied his grievances because she had a known practice of denying grievances filed by inmates who had previously filed grievances concerning her husband (also a prison employee, but not a party to this lawsuit). (*Id.* at 10). He claims that in May or June of 2019 he grieved issues with his religion and medical care to no avail, and in January of 2020 Defendant Livingston's husband wrote him a disciplinary ticket which he also grieved to no avail. He alleges that Livingston caused the outcome of the grievances as an act of retaliation.

Based on the allegations in the Complaint, which are more fully recounted in the Order of Initial Review (Doc. 6), the Court designated four claims, two of which are relevant to the pending Motion for Summary Judgment:

Claim 1:    First Amendment and Eighth Amendment claims against Defendant Vaughn for failing to put Plaintiff on the dietary and medical lists for Ramadan observers;

Claim 4:    First and Eighth Amendment claims against Defendant Livingston for her alleged handling of Plaintiff's grievances.

(Doc. 6 at 5).

The parties have identified two grievances that they allege are potentially relevant—Grievances 06-19-011 (Doc. 44-1 at 137-38) and an October 29, 2019, grievance (Doc. 44-1 at 108-109).

FINDINGS OF FACT

Grievance number 06-19-011 was submitted as an emergency grievance on May 31, 2019, concerning Plaintiff's practice of his religion. Plaintiff wrote:

> I am writing this grievance because my constitutional rights under the First Amendment to practice my religion freely is being violated. Since April 2, 2019, I have been working/trying to work with staff to be placed on [] the Jumah (prayer service) and Ramadan list. I have done everything within my power/control to have this remedied. I've spoke to C/O Jane Doe in R-3, C/O John Doe (ginger beard and glasses) in R-3, Sgt. Lewis, Sgt. Reese or Reed (tall/big ears always has a hat on) Sgt. John Doe. Then I spoke to C/O John Doe in R-1. I was moved to R-6. I then spoke to the following people and made them aware. C/O Thrasher C/O John Doe, C/O John Doe on 3-11 shift on (5-25-2019) C/O Drummond, Sgt. Weaver, Sgt. Mason (5-27-19), Lt. John Doe (5-28-19), Lt. McDonald. This violation has really brought me to my breaking point. Islam is my life! Every day I struggle with my mental illness because some of the thoughts, feelings and actions they cause will lead me to the hell fire. So this physical struggle drains me emotionally. Now the deliberate acts of others are causing me to violate the laws of Islam and these actions ARE/WILL lead(ing) me to the hell fire. I refuse to go to the hell fire because of staffs deliberate indifference and willfulness to play games with me and the worship of my religion!

(Doc. 44-1 at 137-38).

.       On June 4, 2019, the grievance was deemed non-emergency.  (Doc. 44-1 at 137).

On June 17, 2019, a counselor noted, "after speaking with offender, issue has been

resolved."  The grievance was stamped as received by the grievance office on July 10,

2019.  A memorandum from the grievance office indicates "contact your correctional

counselor. Per D.R. 504 Grievances, 'a committed person shall first attempt to resolve

incidents, problems or complaints other than complaints concerning disciplinary

proceedings, through his counselor.'"  A handwritten notation is added that states, "1st

level is marked as resolved."

        The ARB received the grievance on August 12, 2019, and on August 15, 2021, it

rejected the grievance on procedural grounds. (Doc. 44-1 at 134).  A box is checked that

states "not submitted in the timeframe outlined in Department Rule 504; therefore, this

issue will not be addressed further."  A handwritten notation states, "over 60 days from

known incident date."  The grievance records also include a handwritten "proof of

service" form prepared by Plaintiff and stamped received by the ARB on August 12, 2019,

wherein Plaintiff averred that he mailed his grievance to the ARB on August 8, 2019.

(Doc. 44-1 at 136).

        The second grievance the parties identified as relevant is an October 29, 2019,

grievance wherein Plaintiff wrote,

> This grievance is about grievance Officer L. Livingston.  Mrs. Livingston
> answered grievance #9-19-136 on 8-18-2019.  Mrs. Livingston has shown a
> tendency to be partial while investigating grievances.  This partiality
> violates our due process rights under the 14th Amendment.  […] Mrs.
> Livingston has shown time and again to side in favor of staff regardless to
> whatever the grievants claim is, and this violates the 14th Amendment right
> of due process.

(Doc. 44-1 at 108-109). A counselor responded on November 7, 2019, that once Plaintiff had a completed response grievance 9-19-136, his next step was to get a response from the grievance office, and then to appeal to the ARB within 30 days. (Doc. 44-1 at 108). The ARB received an appeal of the October 29 grievance from Plaintiff on December 2, 2019, and on December 9, 2019, they directed him to provide a copy of grievance 9-19-136 that he discussed in the grievance. (Doc. 44-1 at 107).

CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to

proceed or to dismiss it for failure to exhaust.  *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).  The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal.  *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies.  42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740.  "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).  For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code.  20 Ill. Admin. Code § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance.  20 Ill. Admin. Code § 504.810(a).  Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c).  If

the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 Ill. Admin. Code § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 Ill. Admin. Code § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 Ill. Admin. Code § 504.850(d), (e).

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing.

**Defendant Vaughn**

Defendant Vaughn argues that he is entitled to summary judgment because Grievance 06-19-011 did not name him, and it was not properly submitted to the ARB in

compliance with DR 504.  (Doc. 44).  In response, Plaintiff alleges that he did his best to name the individuals involved in his requests for religious accommodations, and that the substance of his grievances should have been sufficient to make the institution aware that Vaughn was involved even if Plaintiff did not specifically know his name or role.  (Doc. 55).  Plaintiff also argues that the ARB's ruling on his grievance was erroneous because he originally filed his grievance as an emergency, and once the Warden ruled on an emergency grievance he believed it should be mailed to the ARB.  In support of this proposition, he cited *Thornton v. Snyder.*

The Court will address the parties' arguments in two steps: (1) did Plaintiff properly complete exhaustion of grievance 06-19-011, and (2) was the grievance sufficient to exhaust a claim against Vaughn?  First, the Court concludes that Plaintiff did properly attempt to exhaust the grievance, but the ARB erred when it denied the grievance for procedural reasons.  Plaintiff filed the grievance on May 31, and it was denied emergency status on June 4, 2019.  (Doc. 44-1 at 137).  Although Plaintiff contends in response to summary judgment that at that point, he could appeal directly to the ARB—this contention is incorrect.  If a grievance is denied emergency status, the inmate must then send it thru the normal chain of grievance processing.  *See* 20 Ill. Admin. Code § 504.840(c) (if a grievance is not handled on an emergency basis, then the offender shall be notified that he may resubmit the grievance as non-emergent in accordance with the standard grievance process).  Despite Plaintiff's contention in response to summary judgment that he could have gone directly to the ARB, which is incorrect, Plaintiff did not go straight to the ARB.  Instead, the record reflects that he must have submitted the grievance through

normal channels to his counselor, who indicated on June 17, 2019, that he spoke "with the offender, issue has been resolved."  (Doc. 44-1 at 137).

Once the issue was deemed resolved by the facility, Plaintiff still attempted to appeal to the grievance office in compliance with the grievance procedure, but the grievance office returned his grievance with a cover memo on July 10, 2019, that stated the issue was already resolved.  Having received this response, Plaintiff also attempted to appeal to the ARB, but the ARB rejected the appeal on procedural grounds.  There are two issues lurking here.  First, after Plaintiff's grievance was deemed 'resolved' by the facility he was not necessarily required to do more because the PLRA does not require appeals of favorable responses.  *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005) (the PLRA does not require an inmate to appeal to higher channels after he receives the requested relief).  Here, it does not appear that Plaintiff actually received the relief he requested, so he continued to try to appeal, but his further efforts were thwarted by the prison's insistence that his issue had been resolved.

Second, the ARB's procedural ruling—that Plaintiff's grievance was over 60 days from the known incident date—is plainly wrong.  Plaintiff's grievance indicated that he began to pursue issues with the exercise of his religion on April 2, 2019, and he continued these efforts by communicating with many officers throughout May of 2019.  He specifically indicated he spoke to officers on May 25, 27, and 28, 2019.  (Doc. 44-1 at 138).  His grievance was filed on May 31, 2019.  This means that the grievance was filed within 60 days of April 2, 2019, or of the individual conversations he had on multiple dates in

May 2019.  Accordingly, there was no basis for the ARB to conclude that the grievance was untimely, and the ARB's ruling was erroneous.

Having determined that Plaintiff's grievance was properly exhausted at all levels (or that Plaintiff at least did everything he could to properly exhaust), the Court must also consider Vaughn's contention that the grievance was insufficient because he was not named in the text.  While the technical language of IDOC's grievance procedure requires an inmate to provide a name or descriptive information about the subjects of the grievance, the Seventh Circuit has allowed a bit more leeway in its interpretation of these provisions.  Relevant to this case, the Seventh Circuit found in *Maddox* that a grievance was sufficient to alert prison officials to an issue—the cancellation of specific religious services—even if the grievance did not name the specific administrators responsible for the cancellation.  655 F.3d at 722.  The *Maddox* Court reasoned that the grievance was sufficient because it clearly and unequivocally complained about the cancellation of religious services, a decision that the prison chaplain and administrators were both aware of and actively involved in.  Thus, regardless of whether the grievance named those individuals, the grievance still gave the officials a chance to remedy the problem with cancelled services. The same rationale applies to this case.

Plaintiff made it abundantly clear in Grievance 06-19-011 that he was attempting to be placed on appropriate lists for observation of Ramadan and for Jumah prayer services.  Though he may not have explicitly named Chaplain Vaughn because he did not know at the time that Chaplain Vaughn was the person to contact, he gave the institution a chance to resolve the issue and to direct him to Vaughn, or any other relevant officer or

official.  As the *Maddox* Court concluded, "that [Plaintiff] didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement."  *Maddox*, 655 F.3d at 722. Here, Plaintiff gave the prison a fair opportunity to address his religious concerns, so his grievance was sufficient to exhaust a claim against Vaughn—whom he alleges is the gatekeeper of religious accommodations like prayer service and special diets for Ramadan.  Accordingly, the Vaughn's Motion for Summary Judgment on the issue of exhaustion is denied.

### Defendant Livingston

Defendant Livingston contends that the October 29, 2019, grievance that mentions her "tendency to be partial while investigating grievances," is not sufficient to exhaust any claims against her because the grievance was not properly exhausted and is too generic.  (Doc. 44).  Plaintiff did not provide any argument concerning Livingston in his response to the Motion for Summary Judgment.  (Doc. 55).

Plaintiff's Complaint presented two sets of allegations concerning Mrs. Livingston's grievance processing.  First, he alleges that in May or June of 2019 he grieved issues with his religion and medical care, and he believed Mrs. Livingston denied his grievances because she was known to be partial.  He additionally alleged that Mrs. Livingston is partial because her rulings on grievances depend on whether the inmate who filed the grievance has had any encounters with her husband, who is also a prison employee.  Second, Plaintiff alleges that in January of 2020 Mr. Livingston (a non-party) wrote him a disciplinary ticket, and he implied that Mrs. Livingston failed to properly

investigate a grievance about the same.  Whatever merit there may be to these two groups of allegations, the grievance documentation submitted by the Defendants relevant to Mrs. Livingston does not align with these dates.

The grievance identified by Defendants was filed on October 29, 2019.  (Doc. 44-1 at 108).  It discussed a grievance that Mrs. Livingston handled in August of 2019.  These two dates do not align with incidents presented in the complaint that allegedly occurred in May/June 2019 or in January of 2020.  Given the discrepancy, it does not appear that the October 29, 2019, grievance sufficiently exhausted the claims presented in the complaint.  Additionally, even if the contents of the October 29 grievance were considered sufficient to exhaust the claims in this lawsuit, the grievance was not successfully exhausted.  Upon receipt of the counselor's response on November 7, 2019, which was the first level of prison review, it appears that Plaintiff submitted the grievance directly to the ARB.  Both the counselor and the ARB directed Plaintiff to resubmit the grievance with a copy of the outcome of another grievance that Mrs. Livingston had handled.  The Defendants contend that there is no record Plaintiff ever properly resubmitted the October 29 grievance, and Plaintiff does not provide any evidence or argument to the contrary.  Accordingly, the October 29 grievance is deficient both in substance, and in procedure, to properly exhaust Claim 4 against Mrs. Livingston.

## John Doe Defendant

In the September 7, 2022, Scheduling Order, the Court directed the parties to engage in limited discovery concerning the identity of John Doe—the defendant named

in association with Claim 3.[1]  (Doc. 35).  Specifically, Plaintiff was directed to produce to the Defendants any information he had about John Doe by October 7, 2022, Defendants were to provide any identifying information by October 22, and Plaintiff was to file a motion to substitute or for additional information by November 7, 2022.  Plaintiff was warned that a failure to file a motion by November 7, 2022, would result in the dismissal of John Doe without prejudice.  (Doc. 35 at 3).

On November 3, 2022, Plaintiff filed a "response" to the scheduling order.  (Doc. 38).  In the response he stated, "John Doe Lt. is/was a white  male between 5'8''-5'10'' nice pretty boy hair, wears glasses last name starts with a 'M.'  I'll know 'em when I see 'em."  (Doc. 38).  This filing is insufficient and does not follow the Court's explicit instructions in the scheduling order.  It does not indicate that Plaintiff engaged in efforts to identify John Doe as directed, and it is not a proper motion for additional steps to be taken to identify John Doe.  To date, Plaintiff has not made any further efforts to identify John Doe.  Accordingly, the Court now finds it appropriate to dismiss Claim 3 against John Doe without prejudice because Plaintiff did not take the appropriate steps to identify this party.

## Conclusion

In sum, Defendants' Motion for Summary Judgment (Doc. 43) will be granted in part and Claim 4 against Mrs. Livingston will be dismissed without prejudice for failure to exhaust, and it will be denied in part and Claim 1 against Defendant Vaughn may

---

[1] Claim 3: Eighth or Fourteenth Amendment claim against Defendant Lt. John Doe for issuing a disciplinary ticket related to Plaintiff's mental breakdown.  (Doc. 6 at 5).

proceed.  Claim 3 against Defendant John Doe will be dismissed without prejudice because Plaintiff failed to follow the steps set forth by the Court's scheduling order for timely identification of John Doe.

As a result of these findings, Claim 1 will proceed against Defendant Vaughn, and Claim 2 will proceed against Defendant Burkhartzmeyer (who previously withdrew the affirmative defense of failure to exhaust).  The Court will issue a separate merits discovery schedule for this matter.

### DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion (Doc. 43) is **GRANTED in part** as to Defendant Livingston, and Claim 3 against Livingston is dismissed without prejudice for failure to exhaust.  By contrast, the Motion (Doc. 43) is **DENIED in part** as to Defendant Vaughn, and Claim 1 may proceed against Vaughn. Claim 3 against Defendant John Doe is dismissed without prejudice because Plaintiff did not follow the procedures to identify John Doe in a timely fashion.

**IT IS SO ORDERED.**

Dated: June 29, 2023

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge