IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEANDRE CRAWFORD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cv-530-DWD |
| | ) |
| **DR. BURKHARTZMEYER,**[1] **et al,** | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Plaintiff DeAndre Crawford, an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for events that occurred while he was detained at Lawrence Correctional Center ("Lawrence"). (Doc. 1). The Complaint alleges, in part, that Defendant Dr. Lisa Burckhartzmeyer violated Plaintiff's First and Eighth Amendment rights by hindering his ability to observe his religion and to secure his necessary medical treatment. (Doc. 1). Dr. Burckhartzmeyer filed a Motion for Summary Judgment. (Docs. 72, 73). Despite being informed of his obligation to respond, Plaintiff has not filed a response.[2] (Docs. 75, 77). For the reasons

---

[1] The Clerk of Court is **DIRECTED** to amend the docket to the correct spelling of Defendant Dr. Burckhartzmeyer's name.

[2] After filing the Motion for Summary Judgment, Dr. Burckhartzmeyer filed a Rule 56 Notice warning Plaintiff about the consequences of failing to properly support or address a fact. (Doc. 75). As stated in the Rule 56 Notice, the Court may consider any uncontested factual assertion undisputed for purposes of the motion and also grant summary judgment if the materials on file show that the moving party is entitled to it. *See* Fed. R. Civ. P. 56(e)(2)-(3). Because Plaintiff filed no response, the Court accepts Dr. Burckhartzmeyer's findings of fact as undisputed. *See* Fed. R. Civ. P. 56(e). That said, and given Plaintiff's *pro se* status, the Court, in determining whether alleged facts are undisputed, has independently reviewed the evidentiary record.

1

stated below, Dr. Burckhartzmeyer's Motion is granted, and the claims against her are dismissed without prejudice.

## Background

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending motion:

Plaintiff was transferred to Lawrence in February 2019 and resided there until January 2024. (Doc. 73-1, p. 9). Dr. Burckhartzmeyer worked as a psychiatrist at Lawrence from February 2019 to July 2021. (Doc. 73-3, p. 1).

Dr. Burckhartzmeyer met with Plaintiff for the first time on March 5, 2019, for a psychiatric diagnostic evaluation. (Docs. 73-3, p. 2; 73-4, pp. 10-24). She diagnosed him with personality disorder with borderline and antisocial traits. (*Id.*). Plaintiff had been previously diagnosed with bipolar disorder and prescribed Zoloft and lithium. (Docs. 73-3, p. 2; 73-4, p. 8). He had a history of frequently stopping and re-starting his medications. (*Id.*). Dr. Burckhartzmeyer continued his prescriptions, to be taken by mouth once a day at bedtime or 8:00 p.m. (Docs. 73-3, p. 2; 73-4, pp. 16, 21-22).

At a follow-up appointment on April 2, 2019, Plaintiff indicated he was stable and happy with his medications. (Docs. 73-3, p. 2; 73-4, pp. 25-29). Dr. Burckhartzmeyer again continued his prescriptions, each to be administered daily at 8:00 p.m. or bedtime, and requested to see him for a follow-up three months later. (Docs. 73-3, p. 2; 73-4, pp. 29, 51).

Now, Plaintiff identifies as Muslim and practices the Islamic faith. (Doc. 73-1, pp. 16-17). As part of his faith, Plaintiff observes Ramadan. (*Id.* at 24-25). In 2019, Ramadan

began on May 5 and ended on June 3. (Doc. 73, p. 3).[3] Ramadan requires followers to refrain from eating or drinking from sun-up to sun-down. (Doc. 73-1, pp. 24-25). Plaintiff was not included on the 2019 Ramadan list, which ensures that medications are distributed at an appropriate time for those who observe Ramadan. (Doc. 74).[4]

On June 3, 2019, Plaintiff reported to a non-party mental health provider that he was "fasting from 4am-8:20pm" and not taking his prescribed psychiatric medications "due to the time of med pass." (Docs. 73-3, p. 3; 73-4, p. 33). At Lawrence, medications are administered by nurses during "med pass" either during the morning or at bedtime per the issuing physician's orders in the Medication Administration Record. (Docs. 73-3, p. 2).

Dr. Burckhartzmeyer met with Plaintiff again on June 5, 2019. (Docs. 73-3, p. 3; 73-4, pp. 34-38). Plaintiff reported that, due to Ramadan fast, he had not taken his medications since May 6, 2019, and did not resume his medications until June 3, 2019. (Docs. 73-3, p. 3; 73-4, p. 36). Dr. Burckhartzmeyer noted that Plaintiff had recently been on crisis watch for suicidal ideation but told her that he did not express suicidal ideation. (*Id.*). Additionally, Dr. Burckhartzmeyer noted that Plaintiff's records were consistent with having denied suicidal ideation while on watch. (*Id.*). Dr. Burckhartzmeyer continued Plaintiff's prescriptions but noted a goal of discontinuing lithium due to health

---

[3] The Complaint erroneously states that Ramadan began on May 20, 2019.

[4] To be placed on the Ramadan list, an inmate must fill out a form 45 days before the start of Ramadan and submit it to the chaplain at Lawrence. (Doc. 73-5).

risks posed by long-term use. (Docs. 73-3, p. 3; 73-4, pp. 36-37). She requested to see him again in three months. (Docs. 73-3, p. 3; 73-4, p. 38).

On August 30, 2019, Dr. Burckhartzmeyer met with Plaintiff again. (Docs. 73-3, p. 3; 73-4, pp. 39-44). She noted that, in the preceding months, Plaintiff had refused his medications "often (nearly half of the time)." (*Id.*). Additionally, she noted that Plaintiff "wants [her] to order meds at a specific time and make the nurses bring it then so it doesn't interfere with his sleep or dayroom." (*Id.*). She discussed strategies with him to ensure he would take his medications as prescribed and advised him that his medications are not safe to be taken only as needed. (Docs. 73-3, pp. 3-4; 73-4, pp. 39-44). As Plaintiff appeared unwilling to take his medications as prescribed, Dr. Burckhartzmeyer discontinued them. (Docs. 73-3, p. 4; 73-4, pp. 39, 42, 53, 59).

Dr. Burckhartzmeyer met with Plaintiff for the final time on November 1, 2019. (Docs. 73-3, p. 4; 73-4, p. 45). Plaintiff refused the appointment, telling her, "I don't ever want to talk to you again" and "I hate you." (*Id.*). He was discharged from her caseload that day. (*Id.*). Plaintiff was reassigned to a different psychiatrist. (Docs. 73-3, p. 5; 73-4, p. 59).

In early December 2019, Plaintiff submitted a grievance related to Dr. Burckhartzmeyer's decision to discontinue his medications. (Docs. 73-3, p. 4; 73-4, pp. 56-57). She responded that she discontinued his medications "after months of [Plaintiff] refusing to take them appropriately" because "[t]he medications he was prescribed are not safe to be taken only as needed." (Doc. 73-4, p. 59). On December 2, 2019, Plaintiff's

lithium and Zoloft prescriptions were renewed after he was placed on crisis watch. (Docs. 73-3, p. 5; 73-4, pp. 51-55).

## Legal Standards

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Ind. Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although the nonmoving party receives the benefit of conflicting evidence and reasonable inferences, he is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago Cnty., Ill.*, 74 F.4th 496, 500 (7th Cir. 2023).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Liberty Lobby*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Liberty Lobby*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a

genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Liberty Lobby*, 477 U.S. at 252.

## Discussion

### A. First Amendment Claim

To proceed on his free exercise claim, Plaintiff must show that Dr. Burckhartzmeyer "personally and unjustifiably placed a substantial burden on his religious practices." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (quoting *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016)). A substantial burden is one that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981). In the prison context, such a burden is justified if it is reasonably related to a legitimate penological interest. *Thompson*, 809 F.3d at 380 (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

As a preliminary matter, the Court considers whether Plaintiff's free exercise rights were substantially burdened by his medication being delivered during his Ramadan fast. Plaintiff claims that he was "forced to choose between his religion or his medical care" because "the med-techs were coming before he was able to break his fast." (Doc. 1, pp. 5, 7). While the Seventh Circuit has not specifically dealt with this question, it has found in similar contexts that "forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson*, 809 F.3d at 380 (collecting cases). The underlying health concerns in those cases is similarly implicated here. Plaintiff was prescribed lithium and Zoloft to treat his personality disorder with borderline and antisocial traits. (Doc. 73-3, p. 2). His medical records show that he was

6

"stable and happy with the medications he was on." (*Id.*). Taking the facts in the light most favorable to Plaintiff, the choice between taking his psychiatric medications or observing Ramadan could present a substantial burden on his free exercise rights. However, as discussed below, the Court does not reach a decision on that issue because Plaintiff has failed to raise a genuine dispute that Dr. Burckhartzmeyer can be held personally liable if he received his medication before he could break his Ramadan fast.

First, Plaintiff's claim that Dr. Burckhartzmeyer refused his to schedule his medications at night is unsupported by the evidence. Dr. Burckhartzmeyer asserts that she was able to order medications to be disbursed by a nurse either in the morning or at bedtime each day during med pass. (Doc. 73-3, p. 5). Plaintiff does not dispute that, prior to and during Ramadan, Dr. Burckhartzmeyer ordered nurses to administer Plaintiff's medications at bedtime, or 8:00 p.m. (Docs. 73-1, pp. 52-55; 73-4, p. 2). Plaintiff claims he asked Dr. Burckhartzmeyer if he could receive his medication at 9:00 p.m, but that he did not know the time of the nightly med pass schedule. (Doc. 73-1, p. 49). However, Dr. Burckhartzmeyer could not have adjusted the timing of his medication beyond designating it to be delivered at bedtime, which she did. (Doc. 73-1, pp. 52-53; Doc. 73-3, p. 5). In fact, even if Plaintiff had been placed on the Ramadan list, Dr. Burckhartzmeyer would not have been required to alter her prescription order to comply with observance of his fast. (Doc. 73-3, p. 5). Instead, the procedure in place at Lawrence was for the nurses to adjust the time individuals on the Ramadan list receive their medications to be outside the fasting period each day. (*Id.*). Therefore, there can be no genuine dispute that Dr.

7

Burckhartzmeyer's designation for Plaintiff to receive his medications at bedtime substantially burdened his religious practices.

In addition to the designated time on his prescriptions, Plaintiff takes issue with the time that he physically received those prescriptions. (Doc. 73-1, pp. 56-57). As to the latter, Dr. Burckhartzmeyer argues she cannot be held personally liable if med pass occurred before Plaintiff was able to break his fast because she was not involved in med pass or otherwise physically administering medications. (Doc. 73, p. 14). The Court agrees.

"[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Plaintiff claims that time his prescriptions were delivered at the nightly med pass "depend[ed] on the day," and that "sometimes it would be early and sometimes it would be later." (Doc. 73-1, pp. 57). However, Plaintiff does not dispute that Dr. Burckhartzmeyer was not involved in administering the medications during med pass. (*Id.* at 57-58). Therefore, to the extent that the nightly med pass occurred before Plaintiff was able to break his fast, Dr. Burckhartzmeyer cannot be held personally liable. (*Id.*).

Additionally, Dr. Burckhartzmeyer argues that, if the First Amendment Claim against her is dismissed, the Court should go one step further and find that there is no evidence that Plaintiff's free exercise rights were substantially burdened by IDOC's policy of distributing medications at certain times because that policy is reasonably

8

related to a legitimate penological interest. (Doc. 73, pp. 16-17). However, that issue is beyond the scope of summary judgment on the First Amendment claim against Dr. Burckhartzmeyer. As the Court has already dismissed the First Amendment claim against her, it declines to rule on the separate matter of the IDOC's medication distribution policy.

### B.   Eighth Amendment Claim

To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted); *Gayton v. McCoy*, 593 F.3d 610, 620, 653 (7th Cir. 2010). A plaintiff need not show the individual "literally ignored" his complaint, but that the individual knew of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

"Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, at 409 (7th Cir. 2014). Courts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. *Pyles*, 771 F.3d at 409. A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* This is because "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) cert. denied, 519 U.S. 1126.  Finally, without more, a "mistake in

9

professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

Here, it is undisputed that Dr. Burckhartzmeyer knew Plaintiff was not taking his medications consistently and that they were "not safe to be taken only as needed." (Doc. 73-3, pp. 3-4). Therefore, in light of Plaintiff's serious medical condition and her knowledge that he was not taking his medications as prescribed, the question is whether Dr. Burckhartzmeyer's treatment of Plaintiff amounted to deliberate indifference. The Court concludes it does not.

Plaintiff claims that he requested Dr. Burckhartzmeyer that order medications for 9:00 p.m. because "the time that [he] was getting [his] medication" was not "the time that [he] could take it" due to Ramadan fast. (Doc. 73-1, p. 50). Nevertheless, Plaintiff alleges she denied his request and "told [him] she's not going to change the system for [him]." (*Id.* at 51). Dr. Burckhartzmeyer does not dispute that on August 30, 2019, Plaintiff requested his medications be ordered at a specific time. (Doc. 73-3, p. 3). However, Dr. Burckhartzmeyer claims the reason he gave her so that "med pass does not interfere with his sleep or dayroom – not because they interfered with Ramadan fasting, as Ramadan had since passed." (*Id.*). Therefore, parties dispute whether Plaintiff requested his medication be moved due to Ramadan fast. Nevertheless, the Court cannot say that dispute is material to the issue of deliberate indifference.

As discussed in the Court's analysis of his First Amendment claim, Dr. Burckhartzmeyer could not have altered her prescription to ensure that Plaintiff received his medications exactly at 9:00 p.m., because nurses were responsible for physically

10

administering his medication during the nightly med pass. (73-3, p. 5). Even assuming Dr. Burckhartzmeyer was aware of Plaintiff's concerns about the delivering of his medications due to his Ramadan fast, there is no evidence that she could have changed the timing of med pass anyway. (*Id.*). Plaintiff does not dispute that Dr. Burckhartzmeyer was not involved in physically administering his medications. (*Id.*). Nor does he dispute that the protocol at Lawrence for administering medication to those observing Ramadan was for the med pass nurses to change the delivery schedule. (Doc. 73-3, p. 5). At any rate, Dr. Burckhartzmeyer's decision for his medications to be delivered at bedtime or 8:00 p.m. rather than 9:00 p.m. does not rise to the level of recklessness required to assert an Eighth Amendment claim, even when considering the allegations in the best light for Plaintiff. Next, the Court considers whether there is a genuine dispute that Dr. Burckhartzmeyer's decision to discontinue Plaintiff's medications amounted to deliberate indifference.

On August 30, 2019, Dr. Burckhartzmeyer discontinued Plaintiff from his prescriptions for Zoloft and lithium. (Doc. 73-4, p. 39). Dr. Burckhartzmeyer asserts that she discontinued the medications "due to his refusal to take his medications consistently and after multiple attempts at discussing medication adherence strategies were met with resistance." (Doc. 73-3, p. 4). She claims that her "decision to discontinue these medications was based on medical judgment and [her] education, training skills, and experience as a psychiatrist, and it was not an effort to delay or deny [Plaintiff] any medically necessary treatment." (*Id.*). On the other hand, Plaintiff claims that she discontinued his medications after he asked for them to be delivered at a later time

11

because they "disagreed about it." (Doc. 73-1, p. 49). He stated, "I guess she didn't like my attitude." (*Id.*).

There is no question that Dr. Burckhartzmeyer and Plaintiff did not see eye-to-eye on Plaintiff's choice to abstain from his medications. Plaintiff does not dispute that he has a history of stopping and re-starting his medications. (Doc. 73-1, p. 58). He states that in 2018, he stopped taking his medications "because there were times I didn't need them," but that in 2019 "I finally decided I needed my medication and I'm just going to take it." (Doc. 73-1, p. 58). He admits to not taking his medications daily as prescribed in 2019 due to Ramadan fast. (*Id.* at 67-68). In response to Plaintiff's "refusal to work on adherence to make medication work and be safely used," Dr. Burckhartzmeyer discontinued his prescriptions. (Doc. 73-4, p. 39). What's more, Dr. Burckhartzmeyer had noted during their visit two months earlier on June 5, 2019, that she had a goal of discontinuing Plaintiff's lithium use in the future due to long-term side effects on the kidneys and thyroid. (Doc. 73-3, p. 3; 73-4, pp. 36-37).

Regardless of the reason Plaintiff decided to stop taking his medications, it is undisputed that he did so and that it was not safe. Therefore, in Dr. Burckhartzmeyer's judgment as a medical professional, she determined the proper course of action was to discontinue the medications. That Plaintiff disagreed with her decision is insufficient to establish an Eighth Amendment violation. *Pyles*, 771 F.3d at 409; *see also Grund v. Murphy*, No. 17-3025, 2018 WL 2747543, at *2 (7th Cir. June 7, 2018) ("Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference."). Even if her decision to discontinue the prescriptions was

12

a mistake, negligence, or malpractice, that still would not be enough. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Based on the evidence provided, no reasonable jury could conclude that Dr. Burckhartzmeyer's treatment decisions amounted to deliberate indifference.

## Conclusion

For the above reasons, the Court **GRANTS** Defendant Burckhartzmeyer's Motion for Summary Judgment. (Doc. 72). Plaintiff's claims against Defendant Burckhartzmeyer are **DISMISSED with prejudice.** The Clerk is **DIRECTED** to terminate Defendant Burckhartzmeyer from the docket and, at the close of the case, enter judgment in her favor consistent with this Order.

**SO ORDERED.**

Dated: February 18, 2025

/s *David W. Dugan*

DAVID W. DUGAN
United States District Judge